Kaplan Trucking Co., Appellant, *v.* Coshocton Cartage, Inc. et al.

Argued November 8, 1965. Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, JACOBS, and HOFFMAN, JJ. (FLOOD, J., absent).

*J. Perry Eckels,* with him *Eckels, Blystone, Fuller & Kinnunen,* for plaintiff, appellant.

*Stuart A. Culbertson,* with him *Paul E. Allen,* for defendants, appellants.

*Paul D. Shafer, Jr.,* with him *Thomas, Shafer, Dornhaffer & Swick,* for defendant, appellee.

OPINION BY ERVIN, P. J., December 16, 1965:

The plaintiff in this action, Kaplan Trucking Co. (Kaplan), brought suit in trespass against three defendants, Coshocton Cartage, Inc. (Coshocton), Russell T. Goddard (Goddard), and Transamerican Freight Lines, Inc. (Transamerican). A dual wheel from another approaching vehicle came loose from the vehicle, crossed the road and struck the truck hauling the plaintiff's load, thereby causing the damage to its cargo.

Plaintiff's evidence established that the truck from which the wheel separated was owned by Coshocton, was driven by a driver, Goddard, in the employ of Coshocton, and at the time the accident occurred a cardboard placard or sign was taped to the doors of the tractor cab. These signs bore the name of Transamerican Freight Lines, Inc. Underneath the cardboard placard on the body of the tractor was the name of Coshocton.

The case was submitted to the jury under the doctrine of exclusive control on the theory that once the plaintiff had established that the wheel had come loose from the trailer, the inference of negligence arose. The plaintiff took the alternative position that having shown that the truck belonged to Coshocton and was being operated by its driver, the jury could determine that the exclusive control of the vehicle was in Coshocton or, relying on the presumption that arises out of the name appearing on a commercial vehicle, it could determine that Transamerican was in exclusive control of the vehicle and that the inference as to negligence arose as to it.

The defendant Transamerican introduced evidence, including its lease[1] with Coshocton and a voucher[2] executed by Coshocton's president two days after the

---

[1] Paragraph 1 of the lease provides: "The Second Party [Coshocton Cartage, Inc.] hereby leases to the First Party [Transamerican Freight Lines, Inc.] the following motor vehicle equipment to be operated by Russell T. Goddard, 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, a driver who is duly authorized by the Second Party to execute this Agreement on its behalf, for the movement in interstate commerce for the duration of one (1) single trip beginning at —— a.m. or 1 p.m. on July 1, 1960, of such freight which First Party shall turn over to Second Party and the Second Party agrees to transport such freight from the place or places where Second Party may receive the same in the City of Coshocton, State of Ohio, direct to and without deviation from authorized routes of the First Party to its terminal in the City of Erie and State of Pennsylvania, which latter city Second Party represents is in the direction of a point which it is authorized to serve."

[2] "PETTY CASH VOUCHER
         HIRED TRUCK RENTAL     ADVANCE OR PAYOFF
         TERMINAL     NEWARK STEEL DIV.
              JULY 7, 1960
RECEIVED FROM TRANSAMERICAN FREIGHT LINES, INC. $122.85
THE AMOUNT OF ONE HUNDRED TWENTY TWO and 85/100 DOLLARS
         ADVANCE
X PAYOFF     TRUCK RENTAL TO HIRED OPERATOR COSHOCTON CARTAGE CO.
SCRIPT SHEET NO.     NKOS 1252
DESTINATION          ERIE PA
PAID BY CHECK NO.    ST 319934
                              Larry Shrimplin
                              Received Payment
Hired Operator must sign one of the statements below. I hereby certify that I was not involved in any accident on trip covered by this payment.
                              Larry Shrimplin
In the event there was an accident, even though minor, I have made a full report to Transamerican Freight Lines, Inc.
                    _____"

accident indicating that the lease between Coshocton and Transamerican was a one-way lease extending from Coshocton, Ohio, to Erie, Pennsylvania, and certifying that the leased vehicle was not involved in any accident on the trip covered by the lease. From this evidence Transamerican reasons that since the accident occurred during the return trip from Erie, Pennsylvania, to Coshocton, Ohio, control of the vehicle had returned to Coshocton and Transamerican had no control over the vehicle. The jury returned a verdict in favor of the plaintiff and against Transamerican. Transamerican filed a motion for judgment n.o.v. and in the alternative for a new trial, and the plaintiff filed a cautionary motion for new trial.

The court below granted judgment n.o.v. for Transamerican and dismissed its motion for a new trial. The plaintiff's rule for a new trial was made absolute against Coshocton only. The plaintiff (Kaplan) and defendant (Coshocton) have filed separate appeals. We are of the opinion that the court below should be affirmed in toto.

We quote with approval the following excerpts from the scholarly opinion of Judge ROBERT L. WALKER: "While some presumptions apparently disappear upon the introduction of evidence (see 103 University of Pennsylvania Law Review 12 et seq., Watkins v. Prudential Insurance Company, supra [315 Pa. 497, 173 A. 644], the presumption that we are here dealing with is, under the Hartig case [290 Pa. 21, 137 A. 867], obviously not that ephemeral. In Holzheimer v. Lit Brothers, supra [262 Pa. 150, 105 A. 73]), the court said, speaking of the presumption of ownership: 'This was presumptive evidence, and as has frequently been ruled, was quite sufficient to carry the case to the jury. As a presumption it was of course rebuttable, but this does not mean that it had any less probative force than it would have had had it rested on direct evidence.

It shifted the burden of proof as to this one issue so that the burden rested thereafter upon the defendant. Except as overcome by countervailing evidence produced by the defendant it stood as a fact in the case.' The court then went on to say that so long as the rebutting evidence rested on oral testimony the credibility of the witnesses remained a jury question and must be submitted to them. However, in the Watkins case, supra, we find the following statement, 'Considerable confusion appears in judicial opinions as to the nature of presumptions and their function in the administration of justice. They are not evidence and should not be substituted for evidence.' And later in the Opinion the court quotes with approval from Professor Thayer: 'By a loose habit of speech, the presumption is occasionally said to be, itself, evidence, and juries are told to put it on the scale and weigh it. . . . A presumption itself contributes no evidence, and has no probative quality.' These apparent inconsistencies in language can only be reconciled on the theory that we are dealing with different types of presumptions. Regardless of what language is used, the Hartig case and the many other cases decided concerning this presumption assign to it some probative force. The evidence in this case however, both documentary and oral, is so overwhelmingly opposed to the presumption that we conclude (a) that the presumption was rebutted as a matter of law, and (b) in the alternative that if it was not rebutted as a matter of law, it was so weakened that it could not become a base for a further inference of negligence." We are resting our opinion upon the legal principle that the presumption was rebutted as a matter of law by the documentary evidence and it therefore becomes unnecessary to consider whether an inference of negligence may be founded thereon.

The new trial awarded to the plaintiff against Coshocton is necessary because under the court's charge

(having found Transamerican liable) it could not find a verdict against Coshocton. The plaintiff in. the new trial will undoubtedly rely upon the exclusive control doctrine and we invite the attention of all parties to the case of *Izzi v. Phila. Transportation Co.*, 412 Pa. 559, 566, 195 A. 2d 784, where Chief Justice BELL said: "The doctrine should be applied only where *all* of the following elements are present:   (a) where. the thing which caused the accident is under the exclusive control of or was made or manufactured by the defendant; *and* (b) the accident or injury would ordinarily not happen if the defendant exercised due care, or made or manufactured the article with due care; *and* (c) where the evidence of the cause of the injury or accident is not equally available to both parties, but is exclusively accessible to and within the possession of the defendant; *and* (d) the accident itself is very unusual or exceptional and the likelihood of harm to plaintiff or one of his class could reasonably have been foreseen and prevented by the exercise of due care; *and* (e) the general principles of negligence have not theretofore been applied to such facts."

The judgment n.o.v. entered in favor of Transamerican is affirmed.

The order for a new trial entered in favor of the plaintiff against Coshocton is affirmed.